UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>ANTHONY DELANO HYLTON, JR.,<br><br>          Defendant. | Case No. 2:17-cr-00086-HDM-NJK<br><br>ORDER AND<br>REPORT & RECOMMENDATION<br><br>(Docket Nos. 36, 38) |

This matter was referred to the undersigned Magistrate Judge on defendant Anthony Delano Hylton Jr.'s motion to suppress evidence and corrected motion to suppress evidence. Docket Nos. 36, 38. The Court has considered Defendant's motion, the United States' response, and defendant's reply. Docket Nos. 36, 38. 39, 43. As Defendant's corrected motion to suppress evidence superseded his original motion, the Court RECOMMENDS denial of Defendant's original motion to suppress evidence, Docket No. 36, as moot.

I. **BACKGROUND**[1]

On December 5, 2016, at approximately 6:02 a.m., Las Vegas Metropolitan Police Department ("LVMPD") Patrol Officer Childers was assigned to a suspicious vehicle call at the intersection of Flamingo Road and S. Jones Boulevard in Las Vegas, Nevada. Docket No. 39-1 at 2. LVMPD Patrol Officers Hinkel and Wright were assigned to the call as backup units. *Id*. When

---

[1] Both parties relied upon the police report and police body camera footage for their recitation of facts. *See* Docket No. 38 at 3-4; Docket No. 39 at 2-4; Docket No. 39-1; Docket No. 40. The Court therefore derives its factual background from the same document and footage.

1  Officer Childers arrived at the intersection, he observed a black Ford sedan idling in the intersection,
2  with the front half of the vehicle jutting out from the westbound number 1 lane into the eastbound
3  number 1 lane. *Id*.

4  Officer Childers parked his vehicle nose-to-nose with the sedan, as he had been taught to do
5  while investigating a potential Driving Under the Influence ("DUI") case. *Id*. Officer Hinkel arrived
6  on the scene as Officer Childers began to approach the sedan, and the two approached together. *Id*.
7  The officers observed a male later identified as Defendant sleeping behind the wheel of the vehicle,
8  and smelled the odor of marijuana emanating from the vehicle. *Id*.; Childers Bodycam Pt 1 of 4 at
9  00:43 - 00:49; Hinkel Bodycam Pt 2 of 3 at 1:16 - 1:18. Officer Childers knocked on the window
10 of the vehicle and gave verbal commands to Defendant, who rolled his window down. Docket No.
11 39-1 at 2; Childers Bodycam Pt 1 of 4 at 1:08 - 1:24; Hinkel Bodycam Pt 2 of 3 at 1:18 - 1:38. Once
12 the window was down, Officer Childers was able to confirm that the odor of marijuana emanated
13 from the vehicle. Docket No. 39-1 at 2. Defendant was dazed and unaware of how he had gotten
14 to the intersection, and had difficulty putting his car into park. *Id*.; Childers Bodycam Pt 1 of 4 at
15 1:23 - 1:46; Hinkel Bodycam Pt 2 of 3 at 1:38 - 1:57. Officer Childers asked Defendant to turn off
16 the car and exit his vehicle with his identification. Docket No. 39-1 at 2; Childers Bodycam Pt 1 of
17 4 at 2:07 - 2:31. Officer Childers told Defendant that his car "reeks of weed." Childers Bodycam
18 Pt 1 of 4 at 3:02 - 3:06.

19 Officer Childers asked Defendant if he had identification. Childers Bodycam Pt 1 of 4 at
20 5:17-5:19. Defendant said it was in his car, and started walking toward the car until Officer Hinkel
21 told him to stay where he was and that he (Officer Hinkel) would get the identification. Officer
22 Hinkel asked Defendant where the identification was in his vehicle. Hinkel Bodycam Pt 2 of 3 at
23 5:28 - 5:39. Defendant said his identification was in the back seat of the vehicle. Hinkel Bodycam
24 Pt 2 of 3 at 5:39 - 5:44. Officer Hinkel asked for further clarification of where the identification
25 would be found, and headed toward the vehicle to find it. Hinkel Bodycam Pt 2 of 3 at 5:44 - 5:58.

26 Officer Childers told Officer Hinkel that he can search the car "because of the weed."
27 Childers Bodycam Pt 1 of 4 at 5:50-5:53. As Officer Childers asked Defendant basic questions and
28 conducted Field Sobriety Tests on Defendant, Officer Hinkel looked through the back seat of

1  Defendant's car and found an unlocked gun case sitting on the rear passenger side seat of
2  Defendant's vehicle.  Docket No. 39-1 at 2; Childers Bodycam Pt 1 of 4 at 5:55 - 15:29; Hinkel
3  Bodycam Pt 2 of 3 at 5:58 - 6:26.  Inside the case, Officer Hinkel found a black .45 caliber Rock
4  Island handgun with brown wooden handle grips, loaded with one round in the chamber.  Docket
5  No. 39-1 at 2-3; Hinkel Bodycam Pt 2 of 3 at 6:26 - 6:33.  The gun case contained a total of three
6  magazines and the firearm and case contained a total of 23 rounds.  Docket No. 39-1 at 3.  Officer
7  Hinkel searched the rest of the vehicle, and found no marijuana, though he did find approximately
8  $1,100 in cash in the center console in the front seat.  Hinkel Bodycam Pt 2 of 3 at 7:28 - 9:17, 20:06
9  - 20:07.

10  Officer Childers confirmed with Officer Hinkel that the gun was found in the back seat of
11  Defendant's vehicle, and that it was not "like an under the influence, possession-type thing."  Hinkel
12  Bodycam Pt 2 of 3 at 19:11 - 19:15.  He also spoke with Officer Hinkel about a Drug Recognition
13  Expert, and determined that one worked on day shift.  Childers Bodycam Pt 2 of 4 at 00:44 - 00:46;
14  Hinkel Bodycam Pt 2 of 3 at 19:23 - 19:25.  Officer Childers determined that Defendant did not have
15  nystagmus and that, although he failed the other two Field Sobriety Tests, that failure could be due
16  to the very cold weather.  Childers Bodycam Pt 2 of 4 at 00:50 - 00:59; Hinkel Bodycam Pt 2 of 3
17  at 19:32 - 19:38.  Officer Childers said that, because of the cold weather, he would probably have
18  failed the Field Sobriety tests, too.  Officer Hinkel responded, "And you don't even drink or do
19  drugs."  Hinkel Bodycam Pt 2 of 3 at 19:38 - 19:43.  When Officer Childers asked what Officer
20  Hinkel had said, Officer Hinkel repeated, "You don't even drink or smell like marijuana."  Hinkel
21  Bodycam Pt 2 of 3 at 19:43 - 19:46.  Officer Childers stated again that Defendant's car "reeked," and
22  Officer Hinkel said that he had found a little "shaker ... thing."  Childers Bodycam Pt 2 of 4 at 1:08 -
23  1:09; Hinkel Bodycam Pt 2 of 3 at 19:46 - 19:53.  Also, officers found an open container of alcohol
24  in Defendant's vehicle, as well as a bottle with what appeared to be crushed "Advil or Ibuprofen"
25  in it.  Hinkel Bodycam Pt 2 of 3 at 19:56 - 19:58, 23:20 - 23:24.

26  Defendant apologized for falling asleep in the intersection, and said that he was tired because
27  he had been awake since 5:30 that morning.  Hinkel Bodycam Pt 2 of 3 at 24:54 - 25:14.  Defendant
28  said he had a gun in his back seat because he works in real estate.  Hinkel Bodycam Pt 2 of 3 at

| | |
|---|---|
| 1 | 26:15 - 26:27. Defendant admitted to smoking marijuana recreationally, but said "it is not enough |
| 2 | to make me fall asleep." Hinkel Bodycam Pt 3 of 3 at 2:42 - 2:51. |

The officers determined, through a records check, that Defendant was convicted in 2007 of felony battery with substantial bodily harm. Docket No. 39-1 at 3; Hinkel Bodycam Pt 3 of 3 at 2:20 - 2:36, 6:43 - 7:03. At 6:49 a.m., Officer Childers placed Defendant under arrest for ex-felon in possession of a firearm and advised him of his *Miranda* rights. Docket No. 39-1 at 3; Hinkel Bodycam Pt 3 of 3 at 7:38 - 7:58. Officer Childers told Defendant that a firearm had been found in his car, and Defendant stated that he believed he could legally possess a firearm since his conviction was nine years earlier. Docket No. 39-1 at 3; Childers Bodycam Pt 3 of 4 at 5:44 - 5:51; Hinkel Bodycam Pt 3 of 3 at 8:03 - 8:11, 8:18 - 8:28. Additionally, Defendant said that he purchased the firearm at a store somewhere on Boulder Highway, and was able to accurately describe it without the officers showing it to him. Docket No. 39-1 at 3; Childers Bodycam Pt 4 of 4 at 00:48 - 1:11; 2:16 - 2:20.

On March 8, 2017, a complaint was issued charging Defendant with two counts of armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); and two counts of use of a firearm in a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1). Docket No. 1. On March 21, 2017, a federal grand jury issued an indictment charging Defendant with two counts of armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); and two counts of use of a firearm in a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1). Docket No. 8. On October 3, 2017, a federal grand jury issued a superseding indictment charging Defendant with two counts of armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); two counts of use and carry of a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); and one count of felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Docket No. 30. Defendant now asks the Court to suppress the firearm found in his vehicle on December 5, 2016. Docket No. 38.

. . . .

. . . .

## II. ANALYSIS

### A. Evidentiary Hearing[2]

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

"A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979). In the instant case, Defendant has not requested an evidentiary hearing. Further, both parties relied upon the same report and body camera footage generated by LVMPD in presenting the facts, though the parties in some instances interpret the facts differently. The Court concludes that no contested issues of fact exist that require an evidentiary hearing in this matter, and the Court will therefore decide the motion on the moving and responsive papers, including the exhibits submitted with the papers.

### B. Motion to Suppress

Defendant submits that the search of his vehicle was unlawful because, on November 16, 2016, the District Attorney for Clark County ("D.A.") "announced that he had suspended prosecutions for the possession of marijuana of less than half an ounce." Docket No. 38 at 2, 4.

---

[2]The Court notes that Defendant has requested oral argument, not an evidentiary hearing. Docket No. 38 at 1. The United States has not specifically requested an evidentiary hearing, but appears to assume that one will be ordered. *See, e.g.*, Docket No. 39 at 2. Nonetheless, as no significant disputed factual issue exists, the Court declines to order an evidentiary hearing. Further, the Court finds that a hearing is not needed to resolve this motion.

Therefore, Defendant contends, as the search of his vehicle was based on the odor of marijuana and as marijuana had been decriminalized due to the vote in November and the D.A.'s subsequent announcement, probable cause did not exist to believe that his vehicle contained evidence of a crime. *Id*. at 2-6. Defendant further submits that, even if the search was valid, the officers unnecessarily prolonged the traffic stop. *Id*. at 8. Defendant submits that the officers quickly concluded that he was not impaired, and submits that he passed all of the field sobriety tests and did not smell of alcohol or marijuana. *Id*. at 8. Defendant further submits that the officers did not ask him for his license until over 27 minutes after he was stopped, thus unreasonably extending the stop. *Id*. at 8-9. Defendant therefore asks the Court to suppress the weapon found during the search of his vehicle. *Id*. at 10.

In response, the United States submits that probable cause existed for the warrantless search of Defendant's vehicle, and that the search fell under the automobile exception to the warrant requirement. Docket No. 39 at 5-6. The United States submits that the law decriminalizing marijuana did not come into effect until January 1, 2017 and, therefore, possession of marijuana was still a criminal offense under both state and federal law at the time Defendant was stopped in the instant case. *Id*. at 7. Additionally, the United States submits that, even if the new state marijuana statute had been in effect at the time of Defendant's stop, it prohibits the consumption of marijuana in a public place or a moving vehicle. *Id*. Therefore, the United States contends, as Defendant was found asleep in a vehicle partway into an intersection, he was dazed and confused, the heavy smell of marijuana emanated from his vehicle, and he failed "a number of steps" on his field sobriety tests, probable cause existed to believe he had consumed marijuana in a public place or his vehicle. *Id*. The United States further submits that, as the officers had probable cause to believe that Defendant had operated his vehicle while impaired, the search was justified under the automobile exception. *Id*. at 7-8. The United States also contends that, although Officer Hinkel found the firearm while searching the vehicle for Defendant's identification, that fact is irrelevant as he had authority to search the vehicle under the automobile exception and his search was objectively reasonable. *Id*. at 8. The United States further contends that, even if the Court finds that the automobile exception did not apply, the firearm should not be excluded because it would have been inevitably discovered, as

officers had probable cause to search the entire interior of the vehicle, including closed containers, for marijuana. *Id*. at 9.

The United States next contends that officers did not unnecessarily prolong the stop. *Id*. at 10. The United States submits that the impaired driving was "an ongoing concern" up until the time Defendant was arrested for possession of the firearm, because Officer Childers was not certain whether Defendant's "level of impairment was unlawful, given the apparent involvement of marijuana, the presence of clues during the [field sobriety tests] and his own lack of [drug recognition] training." *Id*. The United States submits that the officers were waiting for a drug recognition expert to arrive on the scene and take over the investigation when Defendant's felon status was discovered. *Id*. This status then generated probable cause to arrest Defendant, the United States contends, and obviated the need to conclude the investigation as to whether Defendant had operated his vehicle while impaired. *Id*. The United States submits that Defendant's arrest occurred less than 40 minutes after the officers' initial contact with Defendant, and that the investigatory detention was necessary for the officers to confirm or dispel their suspicions that Defendant was impaired. *Id*. Therefore, the United States submits, the officers acted diligently and the duration of the detention did not violate Defendant's constitutional rights. *Id*. at 10-11.

In reply, Defendant submits that he was not dazed when the officers first came upon him, he was instead "briefly disoriented and shaken up by the fact that he fell asleep at the light" and was awakened by "police shining a flashlight in his face in 38 degree weather. Docket No. 43 at 2. Defendant further submits he explained to the officers, within minutes of exiting his vehicle, that he was exhausted because he manages "a lot" of properties." *Id*. Defendant further submits that, when the officers were in close proximity to him, they agreed he did not smell of alcohol or marijuana. *Id*. In support of this contention, Defendant submits that Officer Hinkel used a "subliminal" method of speech by telling Officer Childers that Officer Childers did not smell of alcohol or marijuana to state that Defendant did not smell of either substance. *Id*. Defendant further submits that Officer Childers told Officer Wright that he did not have "an odor of alcohol or anything." *Id*. at 3. Additionally, Defendant submits that no marijuana was found other than residue in a "grinder." *Id*. Defendant also contends that he never asked anyone to obtain his identification from his vehicle, nor

1  did he consent to an officer obtaining his identification from his vehicle. *Id*. Finally, Defendant submits that Officer Childers said over the radio that he has a guy "who might be on marijuana," but did not request a drug recognition officer. *Id*.

Defendant submits that the officers lacked reasonable suspicion and probable cause to search his vehicle. *Id*. at 4. As no marijuana was found in the vehicle, Defendant submits that the officers' statement that an odor of marijuana existed was simply a hunch. *Id*. at 5. Defendant further submits that, since the officers engaged in "subliminal" conversation confirming that Defendant did not smell of marijuana, his car could not have smelled of it either. *Id*. at 6. Defendant next submits that the officers prolonged the detention by 13 minutes after suspicion of impaired driving no longer existed. *Id*. at 8. Therefore, Defendant asks the Court to suppress the firearm found in his vehicle. *Id*. at 12.

**1.  Search of Vehicle**[3]

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S.CONST.AMEND. IV. Since warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search and seizure falls within an exception to the Fourth Amendment's warrant requirement. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). Evidence obtained in violation of the Fourth Amendment, including any "fruit of the poisonous tree," must be suppressed. *Id*.

"A search or seizure effectuated without a warrant issued upon a probable cause determination is 'per se unreasonable under the fourth amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Bagley*, 772 F.2d 482, 490 (9th Cir. 1985) (quoting *Katz v. United States*, 389 U.S. 347, 357(1967)). "One such exception is the 'automobile exception.'" *Id*. Under the automobile exception, "a legitimately stopped automobile may be searched without a warrant if those conducting the search have probable cause to believe that there is contraband in the automobile." *United States v. Sanchez*, 944 F.2d 497, 498 (9th Cir. 1991).

---

[3]Defendant does not contest the legality of the traffic stop itself, or of removing him from the vehicle. *See* Docket No. 38.

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept turning on the assessment of probabilities and the particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. *Id*. at 232. Determining whether probable cause exists "turn[s] on the assessment of probabilities in particular factual contexts." *Id*. The concept does not deal with hard certainties, but with probabilities. *Id*. at 241. This means that a police officer's reasonable but mistaken belief regarding the facts establishing probable cause does not offend the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Probable cause that a vehicle contains contraband will also justify the warrantless search of any container located within the automobile that could reasonably contain the contraband. *Sanchez*, 944 F.2d at 498. "If there is probable cause to believe a vehicle contains evidence of criminal activity, [officers may] search ... any area of the vehicle in which the evidence might be found." *United States v. Ross*, 456 U.S. 798, 820-821 (1982). *Ross* "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Arizona v. Gant*, 556 U.S. 332, 347 (2009).

Warrantless searches of automobiles under the automobile exception are allowed for two reasons. First, the ready mobility of a motor vehicle makes it impracticable for law enforcement officers to secure a search warrant. *California v. Carney*, 471 U.S. 386, 390-391(1985). Second, individuals have a diminished expectation of privacy in motor vehicles because motor vehicles are subject to pervasive governmental regulation. *Id*. at 391. Once it is determined that probable cause exists to believe a vehicle contains contraband, a warrantless search of every part of that vehicle, and such contents as might conceal the object of the search, is justified. *Ross*, 456 U.S. at 825; *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999). *See Chambers v. Maroney*, 399 U.S. 42, 44, 52 (1970) (warrantless search of vehicle valid because police had probable cause to believe car contained evidence of service station robbery when car matched eye-witnesses' descriptions); *Carroll v. United States*, 267 U.S. 132, 153, 160, 162 (1925) (warrantless search of vehicle valid where police had probable cause to believe vehicle contained contraband because defendants agreed to sell illegal

1  liquor to federal agent); *United States v. Henderson*, 241 F.3d 368, 648 (9th Cir. 2000) (warrantless
2  search valid because police had probable cause to believe luggage placed in car contained evidence
3  of bank robbery in which defendant was suspect).

4  In November 2016, Nevada voters voted to decriminalize recreational marijuana. *See*
5  *generally* NRS §§ 453D.010, *et seq*. (legalizing recreational marijuana). The law became effective
6  on January 1, 2017. *Id*. The law allows persons over the age of 21 to, *inter alia*, possess up to an
7  ounce of marijuana. NRS § 453D.110(1). The law prohibits the use of marijuana in a public place
8  or a moving vehicle. NRS § 453D.400(2). Further, the law explicitly states that "[d]riving under
9  the influence of marijuana will remain illegal." NRS § 453D.020(3)(f). *See also* NRS §
10 453D.100(1)(a). This law was not in effect on December 5, 2016, when this incident occurred. At
11 that time, therefore, recreational marijuana remained illegal in Nevada.[4]

12 It is illegal to operate a motor vehicle while impaired. *See* NRS § 484C.110. The odor of
13 marijuana emanating from a vehicle creates sufficient probable cause to justify a warrantless search
14 of the vehicle. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *United States v. Ojeda-Rodriguez*,
15 502 F.2d 560, 561 (9th Cir. 1974); *United States v. Barron*, 472 F.2d 1215, 1216 (9th Cir. 1973)
16 (finding that an officer's scent of marijuana "alone was sufficient to constitute probable cause for a
17 subsequent search for marijuana"); *United States v. Beck*, 2015 WL 74125, at *13 (D.Nev. Jan. 6,
18 2015) ("The odor of marijuana emanating from a vehicle establishes sufficient probable cause to
19 search the vehicle."). *See also United States v. Parker*, 919 F.Supp.2d 1072, 1079 (E.D.Cal. 2013)
20 ("The odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a
21 warrantless search of the vehicle"); *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir.1986)
22 (odor of marijuana provides probable cause to search vehicle at least until likely source of odor is
23 found).

24 . . . .

---

[4]Although the recreational marijuana law was not in effect at the time of Defendant's arrest, the Court finds that the result of this motion would have been the same even if the law had been in effect, as it remains illegal to operate a motor vehicle while impaired, and to use marijuana in a motor vehicle or public place. The odor of marijuana emanating from Defendant's vehicle would constitute probable cause to search the vehicle even under Nevada's current statutory scheme, particularly combined with the other circumstances in the instant case.

The Court finds that the strong odor of marijuana emanating from Defendant's vehicle established probable cause to search the vehicle for contraband.[5] *See United States v. Zamora*, 2017 WL 3186655, at *9 (D.Nev. June 16, 2017), report and recommendation adopted, 2017 WL 3174906 (D. Nev. July 26, 2017). *See also United States v. Liu*, 2015 WL 163006, *5 (E.D. Ca. Jan. 7, 2015).

Although the Court finds that the strong odor of marijuana alone established probable cause, additional facts in this case added to the probable cause determination. The officers found Defendant asleep in a running vehicle in the middle of an intersection; he was dazed and confused when he awoke; and he failed several steps of the Field Sobriety Tests.[6] In light of the totality of the circumstances, the Court determines the police had probable cause to search the truck for narcotics, in any location where narcotics may be found. *See Phillips*, *supra*. *See also United States v. White*, 2016 WL 3010824 (D. Nev. May 25, 2016). While searching the vehicle, Officer Hinkel opened the gun case, a container that could have contained marijuana, and found the firearm. The Court therefore finds that the firearm was found during a lawful search of the vehicle under the automobile exception to the search warrant requirement. *See Ross*, 456 U.S. at 825.[7]

. . . .

. . . .

. . . .

---

[5] The papers and bodycam footage upon which both parties rely unequivocally demonstrate that the officers smelled a strong odor of marijuana. In reply, Defendant submits that the officers did not smell marijuana coming from the vehicle. Docket No. 43 at 5. The Court finds, however, that the officers' belief that they smelled marijuana coming from the vehicle, which they repeated several times, was reasonable. A reasonable but mistaken belief regarding the facts has no effect on a police officer's probable cause determination. *Saucier*, 533 U.S. at 206 ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause ... and in those situations courts will not hold that they have violated the Constitution").

[6] The Court has viewed the bodycam footage of the officers speaking and does not agree with Defendant that they were speaking in some sort of code. Rather, Officer Childers said, in defense of Defendant's failure of two Field Sobriety Tests, that it was so cold outside that he (Officer Childers) would probably fail the tests if he took them. In response to the statement that Officer Childers would fail the tests due to the cold weather, Officer Hinkel noted that Officer Childers did not even smell of marijuana. The Court finds that Officer Hinkel's response indicates that Defendant did, in fact, smell of marijuana.

[7] As the Court finds that the search lawfully occurred under the automobile exception, the Court need not reach the United States' inevitable discovery argument. *See* Docket No. 39 at 9.

2. **Reasonableness of Scope and Length of Detention**

A seizure for a traffic violation "justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called '*Terry* stop' ... than to a formal arrest." *Id*. (citing *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). *See also Arizona v. Johnson*, 555 U.S. at 330. "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop" and to "attend to related safety concerns." *Rodriguez*, 135 S.Ct. at 1614. "In assessing whether a detention is too long in duration to be justified as an investigative stop," it is proper "to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Ultimately, the analysis remains one of reasonableness, and thus the court must examine the "totality of the circumstances" surrounding the stop to determine whether the length is reasonable. *See United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008).

Here, the Court finds that the officers acted reasonably. Defendant was found asleep in a running vehicle in the middle of an intersection. Upon approaching his vehicle, the officers smelled an overwhelming odor of marijuana, to the extent that one officer described it as reeking of marijuana. Defendant appeared dazed and confused when the officers awoke him, and failed several steps of the Field Sobriety Tests. Even considering Defendant's claim that he was simply exhausted, the officers clearly had enough to reasonably believe he was operating the vehicle while impaired.

Defendant submits that the officers prolonged the traffic stop by 13 minutes. The United States submits that Defendant's arrest occurred less than 40 minutes after the officers' initial contact with Defendant, and that the investigatory detention was necessary for the officers to confirm or dispel their suspicions that Defendant was impaired. The Court agrees. During the 40 minutes between the officers coming into contact with Defendant and arresting him, the officers woke Defendant up, made him put his car in park, had him step out of the car, conducted Field Sobriety Tests, questioned Defendant about where he had come from and whether he had smoked marijuana, attempted to contact a drug recognition expert, searched his vehicle, found the weapon, retrieved Defendant's criminal record, determined he was a convicted felon, and arrested him.

Although a lawful detention "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of the stop, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), there is nothing in the record to suggest the officers detained Defendant longer than the amount of time reasonably necessary to complete the mission of this stop. The Court finds, under the facts of this case, that the officers acted reasonably in completing the mission of the stop and did not unreasonably prolong it.

**RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that defendant's Motion to Suppress Evidence (Docket No. 36) be **DENIED** as moot.

IT IS FURTHER RECOMMENDED that defendant's Amended Motion to Suppress Evidence (Docket No. 38) be **DENIED**.

DATED this 15th day of November, 2017.

_____
NANCY J. KOPPE
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).